UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL J. VIDMAR and
CHRISTOPHER E. MANNEY

        Plaintiffs,

        v.                          Case No. 17-CV-0223

CITY OF MILWAUKEE

        Defendant.

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT CITY OF MILWAUKEE**

**STATEMENT OF THE CASE**

The Plaintiffs, Daniel J. Vidmar ("Vidmar") and Christopher E. Manney ("Manney"), bring this action alleging violation of the Fair Labor Standards Act ("FLSA" or "Act") by Defendant, City of Milwaukee ("City"), when it did not pay compensatory time to Vidmar and Manney upon their termination from the Milwaukee Police Department ("Department"). This memorandum is submitted on behalf of the City in support of its motion for summary judgment. The City respectfully asserts that, as a matter of law, the claims made against it by Vidmar and Manney must be dismissed, and that therefore, this Court must grant its motion.

Vidmar and Manney's claims are barred by the applicable statute of limitations; Vidmar and Manney's employment was "terminated" as of the date that the Department's Chief of Police ("Chief") issued Personnel Orders discharging them from the Department; and the alleged violations of the Act are not "willful" under the Act so a two year statute of limitations should be applied.

**PROCEDURAL BACKGROUND**

Vidmar and Manney filed a Summons and Complaint in Milwaukee County Circuit Court on January 25, 2017, which was assigned case number 2017CV000462. Stip. Fact 7. On that same date, Vidmar and Manney filed an Amended Summons and Amended Complaint in Milwaukee County Circuit Court. On February 20, 2017, the City filed a Petition for Removal to the United States District Court for the Eastern District of Wisconsin. Dkt. #1. On February 21, 2017 the City filed its Answer and Affirmative Defenses to the Amended Complaint. Dkt. #2. On April 12, 2017 Vidmar and Manney filed their Second Amended Complaint, and on April 13, 2017 the City filed its Answer and Affirmative Defenses. Dkt. #16 and 17.

The City now brings its motion for summary judgment.

**ARGUMENT**

I. **SUMMARY JUDGMENT IS APPROPRIATE.**

District courts must grant summary judgment "if the pleading, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56. In ruling on a motion for summary judgment, the district court's role is to determine whether there is a genuine dispute as to a fact which is material and outcome determinative. *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995), *cert. denied* 116 S.Ct. 1545. The mere existence of a factual dispute does not defeat summary judgment. The requirement is that there is no <u>genuine</u> issue of <u>material</u> fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (emphasis added). Neither the "mere existence of some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd.*

2

*V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

To defeat summary judgment, plaintiffs must produce specific material facts in support of their claims sufficient to sustain his burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The plaintiffs cannot rest on their pleadings, but must demonstrate the existence of sufficient evidence that if believed by a jury, would support a verdict in their favor. *Jelinek v. Greer*, 90 F.3d 242, 243-4 (7th Cir. 1996). They must "go beyond the pleadings and designate the specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. A defendant is entitled to put the plaintiff to his proof and demand a showing of the evidence. *See e.g. Navarro v. Fuji Heavy Industries. Ltd.,* 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiffs fail to come up with the required proof, the defendant is entitled to summary judgment.

This case involves no genuine dispute regarding any material facts. Plaintiffs have not presented any evidence or facts that would prevent the Court from granting summary judgment for the City. The undisputed facts and relevant case law support summary judgment in favor of the City.

## II. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The FLSA states that an action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S. Code § 255. There are two phrases that must be examined to determine whether plaintiffs' claims are barred by the statute of limitations: when the "cause of action accrued" and whether there was a "willful violation."

### A. Plaintiffs' cause of action accrued on the date of the Chief's discharge order

The FLSA regulations require that "[u]pon termination of employment, an employee shall be paid for unused compensatory time earned after April 14, 1986." 29 CFR § 553.27(b). It is necessary, then, to determine when plaintiffs experienced a "termination of employment." Fortunately, within the last year, the United States District Court for the Eastern District of Wisconsin and the United States Court of Appeals for the Seventh Circuit settled the question of when a Milwaukee police officer's employment is terminated.

In *Milwaukee Police Association v. Flynn*, 213 F.Supp.3d 1113 (2016), the Milwaukee Police Assocation ("MPA") argued that Wis. Stat. § 62.50 requires that police officers continue to be paid after the Chief issues an order discharging them from employment. The plaintiffs in *Flynn* (two of which were the current plaintiffs) argued that § 62.50 allows the Chief only to recommend discharge, and that such recommendation only becomes effective upon action of the Fire and Police Commission ("FPC"). *Id.* at 1117. Judge C.N. Clevert, Jr. disagreed, stating that the Chief "has the power to discharge officers" and that "courts have acknowledged that authority." *Id.* at 1118. To support this interpretation, Judge Clevert pointed to language in Wis. Stat. § 62.50(17)(a) which states that if the charges against the officer are not sustained by the FPC, then the "accused shall be immediately *reinstated* in his or her *former* position." (emphasis added). Judge Clevert reasoned that "[i]f the chief simply recommended discharge, there would be no need for reinstatement and no 'former' position. These words should be interpreted to have meaning, and they support the view that the discharge was effective upon the chief's decision." *Id.*

The Seventh Circuit affirmed the District Court's opinion and left no doubt as to when a police officer's employment is "terminated" for purposes of the FLSA. The Seventh Circuit

4

stated that the plaintiffs "had no property interest in employment once they were discharged for cause by" the Chief and plaintiffs "were not entitled to wages for the period of time between their discharge and the conclusion of their appeal under Wisconsin law *as they were not employed during this time.*" *Milwaukee Police Association, et al. v. Flynn*, No. 16-3743, p. 2 (2017) (emphasis added). In other words, the officers' employment ended as of the date of the Chief's discharge order. Echoing the sentiments of Judge Clevert, the Seventh Circuit stated that "if a discharge by the chief were merely a recommendation, there would be no need to *reinstate* an officer and there would be no *former position.*" *Id.* at 13 (emphasis in original). Because the officers in that case (and in this one) "were not reinstated, their former positions concluded on the date that they were discharged by the chief." *Id.* The Court concluded its opinion by stating that the plaintiffs "were not employees of the Milwaukee Police Department after they were discharged by" the chief of police. *Id.* at 16.

The Seventh Circuit's opinion uses the terms "termination" and "discharge" interchangeably. On the first page of the opinion, the Court states that the plaintiffs "appealed their *terminations* to the Board of Fire and Police Commissioners…, which rejected their appeals and they were permanently *discharged.*" *Id.* at 1. (emphasis added) Just one page later, the Court states that "Vidmar appealed his *termination* to the Board of Fire and Police Commissioners…, which conducted a trial on May 12 and June 17, 2014 and affirmed, concluding that his *discharge* was appropriate." *Id.* at 2. (emphasis added) The Court's interchangeable use of these terms shows that it considers "termination" and "discharge" to be identical concepts.

The word "discharge" appears in the FLSA in 29 U.S. Code § 215(a)(3) where it states that it shall be unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be

5

instituted any proceeding under or related to this chapter." The term "discharge," in this section, has repeatedly been interpreted as termination of a person's employment. *See, e.g.*, *Starnes v. Wallace*, 849 F.3d 627 (5th Cir. 2017); *Fezard v. United Cerebral Palsy of Cent. Arkansas*, 809 F.3d 1006 (8th Cir. 2016); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803 (7th Cir. 2005).

The City's interpretation is also supported by Chapter 109 of the Wisconsin Statutes, which serves as the state's equivalent of the FLSA. Chapter 109, "Wage Payments, Claims and Collections," defines "wages" to include overtime pay "and any other similar advantages…provided by the employer to the employees as an established policy." Wis. Stat. § 109.01(3). Under the section entitled "When wages payable; pay order," the statute requires that any employee "who quits employment or who is *discharged from employment* shall be paid in full by no later than the date on which the employee regularly would have been paid under the employer's established payroll schedule." Wis. Stat. § 109.03(2) (emphasis added). Chapter 109 uses the term "discharge," and that section is clearly intended as a corollary to 29 CFR § 553.27(b). The terms "discharge" and "termination" are again used to convey the exact same meaning: an end to the employment relationship.

The Seventh Circuit and the Eastern District were very clear in *Flynn*: a police officer's employment ends when the Chief orders his/her discharge. As Plaintiffs' counsel succinctly stated, "neither the charter nor the Code of Federal Regulations talks about a permanent separation from service or permanent termination of employment." Ratliff Dep. p. 32. Plaintiffs now try to walk a very narrow line by arguing that the officer's employment is not "terminated" when the Chief discharges them, nor is it when their all of their appeals are exhausted, but it is

6

when their *statutory* appeals are exhausted.[1] Second Amended Complaint, Dkt. 16, ¶ 32. There is literally no support for this interpretation.

A discharged police officer can continue to appeal his/her discharge beyond the circuit court level. Although Wis. Stat. § 62.50(22) states that the FPC's decision shall become "final and conclusive" after the circuit court sustains it, Vidmar and Manney both appealed the circuit court's decision to the Wisconsin Court of Appeals. DPFOF 20 and 21; Stip. Facts 6 and 15. If Vidmar had chosen to appeal the Court of Appeals' decision to the Wisconsin Supreme Court, he could have done so. DPFOF[2] 19; Ratliff Dep. pp. 27 and 48; *Gentilli v. Bd. Of Police & Fire Comm'rs of City of Madison*, 2004 WI 60, ¶14. It should also be noted that the Wisconsin Court of Appeals has reversed the decision of the Circuit Court on multiple occasions. *See, e.g. Sliwinski v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 2006 WI App 27, ¶ 16. In fact, it is still possible that the decisions regarding Manney's discharge will be reversed. DPFOF 20; Stip. Fact 15.

Vidmar was discharged by virtue of the Chief's order on January 8, 2014. Stip. Fact 2; Def. Ex. 8. Manney was discharged by virtue of the Chief's order on October 15, 2014. Stip. Fact 11; Def. Ex. 9. The present action was filed on January 25, 2017. Stip. Fact 7. If the standard two-year statute of limitations applies, Vidmar needed to bring an action on or before January 8, 2016, and Manney needed to bring an action on or before October 15, 2016. Hence, both plaintiffs' claims are "forever barred" by the two-year statute of limitations. Even assuming, *arguendo*, that the City's violation was "willful" and that the three year statute of limitations

---

[1] Presumably, plaintiffs chose this sweet spot between the Chief's order and the exhaustion of the officer's appeals because it is the only theory that would allow both plaintiffs in this case to prevail. If termination of employment occurs on the date of the Chief's order, then Vidmar's claim is time barred. If termination of employment occurs on the date that all appeals have been exhausted (including certiorari review at the appellate court level), then Manney's claim is not yet ripe because the Wisconsin Court of Appeals has not yet ruled on his case.

[2] Defendant's Proposed Findings of Fact are referred to as "DPFOF."

7

applies, Vidmar's claim would have needed to be filed on or before January 8, 2014. Vidmar's claim is time barred even if the Court finds that the City willfully violated the FLSA.

If the Court finds that Vidmar and Manney's employment was not terminated on the date of the Chief's discharge order, then the termination date should be the date that all of their appeals (including appeals to the Wisconsin Court of Appeals and the Wisconsin Supreme Court) are exhausted. In this latter scenario, Manney's claim would not have been ripe at the time it was filed, because his appeal is still pending at the Wisconsin Court of Appeals.

### B. *The City did not willfully violate the FLSA*

As noted above, the FLSA allows for a three-year limitations period when an employer's violation is found to be "willful." The Plaintiff bears the burden of proving that an employer's conduct is willful for purposes of the statute of limitations. *Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995), citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308 (1986).[3] In the watershed case that defined "willful" FLSA violations, the Supreme Court of the United States noted that in creating the two-tiered statute of limitations, Congress "intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988). The term "willful" is "synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" Id. at 133. Willful refers to "conduct that is not merely negligent;" willfulness means that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id.

In *McLaughlin*, the Secretary of Labor argued that an FLSA violation should be considered willful "if the employer, recognizing it might be covered by the FLSA, acted without

---

[3] Some of the cases cited in Defendant's brief discuss willful violations of the Age Discrimination in Employment Act ("ADEA"). The ADEA borrows the FLSA's standard to determine when liquidated damages are appropriate in ADEA cases. For purposes of interpretation, "willfulness" is the standard under both statutes, and an interpretation

8

a reasonable basis for believing that it was complying with the statute." Id. at 134. The Supreme Court rejected the Secretary's suggestion, reasoning that the proposal "would apparently make the issue in most cases turn on whether the employer sought legal advice concerning its pay practices." Id. The Court believed that such an approach would "permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects." Id. at 135.

The *McLaughlin* decision has been interpreted by the Seventh Circuit to mean that "reasonableness" is not the proper standard for determining "willfulness." *Brown*, 883 F.2d at 512. The "willful" standard "is designed to shield the employer who violates the Act without knowing it." *Shager v. Upjohn Co.*, 913 F.2d 398, 406 (7th Cir. 1990), citing *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 129 (1985). If an employer holds an "incorrect – even unreasonable – but sincere" belief that its actions do not violate the law, that "employer's action would not be willful." Id.

Plaintiffs have not shown that the City acted willfully under the applicable standard. Cynthia Ratliff was the Payroll Supervisor for the Department during the relevant time period. DPFOF 2 and 3; Yerkes Dep. p. 5; Ratliff Decl., paras. 3 and 4. In her position as Payroll Supervisor, Ms. Ratliff is in charge of the Department's entire payroll department. DPFOF 4; Yerkes Dep. p. 5; Ratliff Decl., para. 5. Prior to the filing of the current lawsuit, nobody ever suggested to Ms. Ratliff that the Department's comp time payout practice for terminated police officers may violate the FLSA. DPFOF 9; Ratliff Dep. p. 30; Ratliff Decl., para. 8. Ms. Ratliff was operating under a good-faith assumption that the Department's comp time practices were

---

of willfulness in an ADEA case is equally applicable to an interpretation of the same term under the FLSA. *See Brown v. M & M/Mars*, 883 F.2d 505, 512 (7th Cir. 1989).

FLSA compliant. DPFOF 11; Ratliff Decl. para. 10. Even if Ms. Ratliff's assumption is incorrect, *McLaughlin* and its progeny instruct that does not mean the violation was willful.

Until the recent decisions in the *Flynn* cases, the Department's practices for comp time payout to terminated police officers were arguably compliant with the FLSA regulations. Prior to the *Flynn* decisions, it was not entirely clear when a police officer was "terminated" for purposes of the FLSA. After those decisions, we know that a police officer's employment is terminated when the Chief issues a personnel order that separates the officer from the Department. As noted by the court in *Schager*, an employer's violation is not willful so long as the employer had good faith belief that it was compliant, even if that belief turns out to be incorrect.

Plaintiffs point to portions of the Milwaukee Code of Ordinances as proof that the City willfully violated the FLSA regulations. The Ordinances actually prove just the opposite – that any violation which may have occurred was not willful. Reckless disregard, in context of a "willful" violation, means that the employer is indifferent as to whether or not it is violating the law.[4] *See Zazu Designs v. L'oreal, S.A.*, 979 F.2d 499, 507 (7th Cir. 1992); *Shager* at 406.

The City has passed multiple ordinances aimed at ensuring compliance with Chapter 109 of the Wisconsin Statutes and the FLSA. Def. Ex. 2 and 3. If the City was indifferent as to whether it violated the FLSA, it does not make any sense that it would pass ordinances, the purpose of which is to comply with the FLSA. If the City failed to ensure that every department was complying with every regulation of the FLSA, that does not mean that it willfully violated

---

[4] Plaintiffs have not presented any evidence, nor do they seem to argue, that higher ranking officials within City government (e.g. Department of Employee Relations or the Comptroller's office) knew that the Department's comp time payout practices may be violative of the FLSA. As such, this brief focuses on the "reckless disregard" portion of the *McLaughlin* willfulness standard. Even if the City knew of the Department's comp time payout practices all along, those practices were arguably FLSA compliant prior to the *Flynn* decisions, meaning that the City could have maintained a good faith belief that those practices were legal prior to July of 2017.

10

the law. Even if the City's failure to do so is deemed unreasonable or negligent, it does not rise to the level of recklessness under *McLaughlin* and its progeny.

To put the Plaintiffs' assertion of willfulness in context, it is helpful to review cases in which the employer was found to have acted willfully. *See Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255–56 (10th Cir. 2017) (Employer falsified payroll records, withheld records requested by the wage and hour division investigator, lied to the investigator and instructed his employees to lie, and failed to keep accurate time records.); *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995) (Employer's legal department explicitly told employer that it could not dock exempt employees pay for partial day absences, but the employer continued to do so.); *Shager* at 406 (Employer set up older employee for failure by giving him an undesirable assignment without any reasonable business rationale, brought in a younger worker whom the employer didn't need, and then fired the older worker "on trumped-up charges."). The City's and the Department's actions do not come anywhere close to the types of violations in these cases.

One case in which an employer's FLSA violation was found *not* to be willful is particularly instructive. In *Howard v. City of Springfield, Illinois*, police officers argued that the three-year statute of limitations applied to the City's failure to pay the officers for certain time spent taking care of dogs in the canine unit. 274 F.3d 1141 (7th Cir. 2001). The circuit court concluded that the three-year limitations period was appropriate, but the Seventh Circuit reversed. Plaintiffs argued that by incorporating certain of the dog care hours into the collective bargaining agreement, but not others, the defendant showed that it was aware that all the hours needed to be paid and therefore the violation was willful. *Id.* at 1144. The Court stated that argument was unreasonable because it would "require the corresponding inference that the union

11

was aware that all of the kennel time was compensable, and that the union nevertheless agreed to a provision that would not provide that compensation which the law requires." *Id.*

In the present case, we have a comp time payout practice that has been in place for more than twenty years. DPFOF 8; Ratliff Dep. pp. 29-30. It is a generally accepted tenet of labor law that "clear and long standing practices can establish conditions of employment as binding as any written provision of the agreement." Elkouri & Elkouri, *How Arbitration Works*, p. 12-2, quoting *Alpena Gen. Hosp.*, 50 LA 48, 51 (Jones, 1967). The MPA went more than twenty years without challenging the comp time payout practice. Like in *Howard*, the tacit approval of the MPA would require the Court to infer that the MPA was aware that comp time should be paid out earlier, but it chose to let the practice stand for decades. A much more reasonable explanation is that both the MPA and the Department/City believed that the comp time payout practices were FLSA compliant, and therefore any violation that occurred was not willful.

### C. *The statute of limitations applies equally to claims for declaratory relief*

Plaintiffs' Second Amended Complaint asks the Court to "issue a declaratory judgment that the City's acts and omissions violated provisions of the FLSA." Dkt. 16, p. 7. The United States District Court for the Northern District of Illinois, Eastern Division, encountered an identical request, and concluded that the FLSA statute of limitations applies to a plaintiff's claims for declaratory relief. *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1013 (N.D. Ill. 2010). The court noted that declaratory relief can escape a statute of limitations when it is offered as a defense to a still-viable claim, but that plaintiffs were only seeking "a declaration that Defendant's policies and practices violate state law," which would then entitle Plaintiffs to affirmative relief. *Id.* "This mere re-labeling of plaintiffs' claims for coercive relief cannot avoid

12

the bar of the statute of limitations." *Id.* at 1014, quoting *Morris v. Mfrs. Life Ins. Co.*, 1997 WL 534156, at 10 (S.D. Ind. Aug. 6, 1997).

Plaintiffs in the present case are taking the same approach as plaintiffs in *Ottaviano* and *Morris*. Such approaches are not generally favored in the law. *See, e.g. Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands,* 461 U.S. 273, 285 (1983) (citation omitted) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."); *Shawnee Trail Conservancy v. U.S. Dept. of Agriculture*, 222 F.3d 383, 388 (7th Cir. 2000) (allowing a declaratory judgment action 'would render the Quiet Title Act's statute of limitations meaningless.'") (citation omitted).

The plaintiffs' request for declaratory relief is a "mere re-labeling" of their claims for monetary relief. If Plaintiffs claims are not contained by the FLSA's limitations period, the statute of limitations within the FLSA becomes meaningless. Defendant requests that this Court not allow the Plaintiffs to avoid the FLSA's statute of limitations by means of "artful pleading."

### III. PLAINTIFFS MAY NOT SEEK INJUNCTIVE RELIEF

Plaintiffs' Second Amended Complaint asks the Court to enjoin the City from committing any further violations of the FLSA. Dkt. 16, p. 7. Interpreting Sections 217 and 211 of the FLSA, the Seventh Circuit has held that "the right to seek injunctive relief rests exclusively with the Secretary of Labor." *Howard v. City of Springfield, Illinois*, 274 F.3d 1141, 1145 (7th Cir. 2001). As such, "private parties may not seek injunctive relief under the FLSA." *Id.*

Plaintiffs' claim for injunctive relief should be denied accordingly.

**CONCLUSION**

There are no disputed material facts in this case, and summary judgment is therefore appropriate. The decisions in the *Flynn* cases dictate that a police officer's employment with the City ends as of the date he/she is discharged by the Chief. Therefore, Vidmar and Manney's claims for relief accrued on January 8, 2014 and October 15, 2014, respectively. Plaintiffs have offered no evidence to show that the City's violations of the FLSA, if there were any, were "willful" for purposes of the statute of limitations, and therefore the two-year limitations period applies. Vidmar and Manney's claims were "forever barred" after January 8, 2016 and October 15, 2016, respectively. The present action was not filed until January 25, 2017, and both claims should be dismissed as untimely. Because both plaintiffs' substantive claims are time-barred, their claim for declaratory relief must also fail.

For the foregoing reasons, the City respectfully requests that the Court grant its motion for summary judgment.

Dated and signed at Milwaukee, Wisconsin 15th day of August, 2017.

GRANT F. LANGLEY
City Attorney

s/ Benjamin J. Roovers
Assistant City Attorney
State Bar No. 1092395
Attorneys for Defendant
Milwaukee City Attorney's Office
200 East Wells Street, Room 800
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
Email: broove@milwaukee.gov

1032-2017-288.001/239797