UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DANIEL J. VIDMAR and**
**CHRISTOPHER E. MANNEY,**

    Plaintiffs,

  v.                                  Case No. 17-CV-223

**CITY OF MILWAUKEE,**

    Defendant.

---

**DECISION AND ORDER ON PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**

---

      Daniel J. Vidmar and Christopher E. Manney are former officers of the Milwaukee Police Department ("MPD"). Vidmar and Manney sue the City of Milwaukee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, alleging that the City failed to pay compensatory time to the officers upon their termination of employment from the MPD. The parties have filed cross motions for summary judgment. For the reasons that I explain in this decision, the plaintiffs' motion for summary judgment is denied and the defendant's motion for summary judgment is granted in part and denied in part.

## UNDISPUTED FACTS

      The parties agree to the following relevant facts. Daniel J. Vidmar is a former police officer with the MPD and was employed by the City. (Stipulated Facts ("Stip. Facts" ¶ 1, Docket # 23.) The Chief of Police issued an order discharging Vidmar on January 8, 2014. (*Id.* ¶ 2.) The City of Milwaukee Fire and Police Commission ("FPC") upheld Vidmar's discharge order on or about June 17, 2014. (*Id.* ¶ 3.) The FPC issued its written decision

regarding Vidmar's discharge on June 26, 2014. (*Id.* ¶ 4.) Vidmar appealed the FPC's decision to the Circuit Court, which issued a decision on June 10, 2015, upholding the FPC's decision. (*Id.* ¶ 5.) Vidmar appealed the Circuit Court's decision to the Court of Appeals, which issued a decision on November 15, 2016 affirming the Circuit Court's decision. (*Id.* ¶ 6.) As of January 25, 2017, the date this action was filed, the City had not yet paid Vidmar for compensatory time ("comp time") which Vidmar had earned and which was banked with the City while Vidmar had been employed by the City. (*Id.* ¶ 7.) Vidmar's comp time bank totaled 226.05 hours of comp time at the time of the termination of his employment. (*Id.* ¶ 8.) On or about March 23, 2017, the City issued payment to Vidmar in an amount equal to all comp time that had been banked in his name ($7,615.71, less required withholding). (*Id.* ¶ 9.)

Christopher E. Manney is a former police officer with the MPD and was employed by the City. (*Id.* ¶ 10.) The Chief of Police issued an order discharging Manney on October 15, 2014. (*Id.* ¶ 11.) The FPC upheld Manney's discharge on or about March 23, 2015. (*Id.* ¶ 12.) The FPC issued its written decision regarding Manney's discharge on April 28, 2015. (*Id.* ¶ 13.) Manney appealed the FPC's decision to the Circuit Court, which issued a decision on July 22, 2016, upholding the Commission's decision. (*Id.* ¶ 14.) Manney appealed the Circuit Court's decision to the Court of Appeals, which has yet to issue an opinion regarding the Circuit Court's decision. (*Id.* ¶ 15.) As of the date this action was filed, the City had not yet paid Manney for comp time which Manney had earned and which was banked with the City while Manney had been employed by the City. (*Id.* ¶ 16.) Manney's comp time bank totaled 22.0 hours of comp time at the time of the termination of

his employment. (*Id.* ¶ 17.) Since filing this action, the City has not paid Manney the monetary equivalent of the 22.0 hours of banked comp time. (*Id.* ¶ 18.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

3

## ANALYSIS

The plaintiffs allege that the City violated the FLSA by failing to pay them banked comp time upon their termination of employment. The City argues that the plaintiffs' claims are barred by the FLSA's two year statute of limitations. The plaintiffs argue that the applicable statute of limitations is three years because the City's conduct was willful. The parties disagree as to when the causes of action accrued, specifically, when the officers' employment was terminated. Thus, the issues before me are (1) when did the officers' causes of action accrue and (2) what is the applicable statute of limitations.

   1.   *Termination of Employment*

Pursuant to 29 C.F.R. § 553.27, "[u]pon termination of employment, an employee shall be paid for unused compensatory time . . . ." The FLSA provides that a cause of action must be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a).

The parties disagree as to the date Vidmar and Manney were terminated from their employment with the MPD. The plaintiffs argue that Wis. Stat. § 62.50 provides that a police officer suffers a "termination of employment" upon the latter of: (1) the Chief's issuance of a personnel order discharging the officer; (2) the Board of Fire and Police Commissioners' (the "Board") decision under § 62.50(17) (assuming the officer appeals the Chief's discharge order); or (3) the circuit court's decision under §§ 62.50(20) and (22) (assuming an appeal is taken from the Board's decision). (Pl.'s Resp. Br. at 3, Docket # 34.) Thus, because the plaintiffs appealed the Board's decision, they argue that Vidmar was terminated on June 10, 2015 and Manney was terminated on July 22, 2016—the dates on

4

which the circuit court upheld the Board's decision regarding the plaintiffs' discharge. (Pl.'s Br. in Supp. of S.J. at 15, Docket # 22.)

In contrast, the City argues that an officer's employment is terminated when the Chief of Police issues an order discharging the officer. Thus, the City argues that Vidmar was terminated on January 8, 2014 and Manney was terminated on October 15, 2014—the dates on which the Chief of Police issued discharge orders. (Def.'s Br. in Supp. of S.J. at 4-8, Docket # 27.) The City cites to the Seventh Circuit's recent decision in *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636 (7th Cir. 2017) in support of its argument.

This is not the first time Vidmar and Manney have litigated the question of what date their employment was terminated. The Seventh Circuit has already answered this question. In *Flynn*, Vidmar and Manney sued the Chief of Police and the City pursuant to 42 U.S.C. § 1983, alleging deprivation of property without due process as a result of termination of pay and benefits while awaiting final decision by the Board. They also brought a wage claim pursuant to Wis. Stat. § 109.03. Vidmar and Manney argued that Wis. Stat. § 62.50 provided them with a property interest in employment after being dismissed by the chief. They argued that the officers retained a protected interest in employment until their trials on appeal. Vidmar and Manney argued that § 62.50(11) permitted discharge only after a trial; thus, the chief merely recommends discharge and only the Board can effectuate a discharge. The Seventh Circuit disagreed, finding that discharged officers do not have a property interest in employment and that the chief has the authority to discharge the officers.

In so finding, the court analyzed Wis. Stat. § 62.50. Wis. Stat. § 62.50 governs police and fire departments in "1st class cities" in Wisconsin. Milwaukee is considered a "1st class city" because it has a population of larger than 150,000. Wis. Stat. § 62.05(1)(a). "The

5

statute, which includes thirty-two subsections, maps out required procedures for Milwaukee police and fire departments, covering topics from the appointment of chiefs to the printing and distribution of regulations." *Flynn*, 863 F.3d at 641 (citing Wis. Stat. § 62.50(6), (4)). Section 62.50 also governs employment protections for officers who are members of the Milwaukee police department force. *Id.* (citing Wis. Stat. §§ 62.50(11)–(18)). The statute also provides for circuit court review for officers who are discharged, suspended, or reduced in rank. Wis. Stat. § 62.50(20)–(22).

The court first considered Wis. Stat. § 62.50(11), which provides that: "No member of the police force . . . may be discharged or suspended for a term exceeding 30 days by the chief . . . except for cause and after a trial under this section." Vidmar and Manney argued that this statute mandates that a police officer cannot be discharged unless there is (1) cause and (2) a trial before the Board. 863 F.3d at 641–42. Thus, they argued that the language dictates that the officers retain a protected interest in employment until their trial on appeal and that the statute provides a system whereby the chief merely recommends discharge, and only the Board can effectuate the discharge. *Id.* at 642. The court quickly disposed of the argument that the chief lacked authority to discharge officers, looking at the plain language of the statute that provides that an officer may be discharged "by the chief," with no qualifier. *Id.*

As to the second argument, the court noted that while "it may be tempting" to read § 62.50(11) to stand for the proposition that no discharge can be effected until "after a trial," the court noted that the language of the statute must be considered as a whole and the context is important to the meaning. *Id.* The court then considered § 62.50(13)–(17)

6

explaining that those statutory provisions indicate that "discharge or suspension of a Milwaukee police officer has two distinct phases." *Id.* at 643. The court stated that:

> The first phase is a discharge or suspension by the chief, which must be made for cause, as embodied in § 62.50(11). The second phase is elective, and provides for a trial and appeal of discharge or suspension, as provided in § 62.50(14)–(17). The second phase occurs if requested by the discharged or suspended officer pursuant to § 62.50(13) (that subsection is appropriately titled: "Notice of discharge or suspension; appeals."). The chronological structure of the tiered discharge or suspension process flows through the statute, and explains why § 62.50(11) mentions a "trial under this section"— because after discharge (or suspension) by the chief, a former officer is entitled to a trial and appeal before the Board pursuant to § 62.50(13)–(17). Such is the process officers are due under the statute. An officer may be discharged for cause, but he is guaranteed an opportunity to reclaim his property interest in employment on appeal after a trial. However, the statute is clear that a property interest is lost at the first juncture.

*Id.* The officers also argued that § 62.50(17) indicates that the police chief cannot "permanently discharge" an officer because the language is not mentioned in the statute until subsection 17. Section 62.50(17) provides as follows in relevant part:

> If the board or panel determines that the charges are sustained, the board shall at once determine whether the good of the service requires that the accused be permanently discharged or be suspended without pay for a period not exceeding 60 days or reduced in rank. If the charges are not sustained the accused shall be immediately reinstated in his or her former position, without prejudice. The decision and findings of the board, or panel, shall be in writing and shall be filed, together with a transcript of the evidence, with the secretary of the board.

The Seventh Circuit rejected this argument, finding that the officers' proposed interpretation of the statute was analogous to a magistrate judge's report and recommendation, which takes no effect unless and until signed by a district court judge. 863 F.3d at 643. The court noted that the officers suggest that discharge by the chief cannot take effect unless and until affirmed by the Board after a trial. The court found, however, that this structure did not make sense and that under that interpretation, a police officer "dismissed" by the chief who

7

did not seek appeal could never be "permanently discharged." *Id.* The court found that the term "permanent" meant that a discharged officer had no further recourse after the discharge was sustained by the Board. *Id.*

The court also noted that the subsection provided that if the Board did not sustain a dismissal, the officer would be "reinstated" to his or her "former" position and noted that if the chief's discharge was merely a recommendation, there would be no need to reinstate an officer and there would be no former position. *Id.* The court concluded, then, that because the officers were not reinstated, "their former positions concluded on the date that they were discharged by the chief." *Id.* Further, in denying the wage claim under § 109.03, the court also stated that the officers "were not employees of the Milwaukee Police Department after they were discharged by Chief Flynn." *Id.* at 645. As such, the court found the officers were not owed wages pursuant to the statute. *Id.*

Vidmar and Manney note that the statute also provides a "third phase" of the discharge process the *Flynn* court did not address—appealing the Board's decision to the circuit court. The officers argue that Wis. Stat. § 62.50(22) "makes it clear" that the circuit court's decision is final and conclusive as to the issue to be considered under § 62.50(21). Section 62.50(21) provides as follows:

> If the decision of the board is reversed, the discharged or suspended member shall forthwith be reinstated in his or her former position in the department and shall be entitled to pay the same as if not discharged or suspended. If the decision of the board is sustained, the order of discharge, suspension or reduction shall be final and conclusive in all cases.

While the officers acknowledge that this "third phase" was not at issue in *Flynn*; they argue that the language of the statute and the *Flynn* court's reasoning provide that a police officer's employment is "terminated" on the latter of: (1) the chief's issuance of a personnel order

8

discharging the officer; (2) the Board's decision to affirm that discharge; or (3) the circuit court's decision to affirm the discharge. (Docket # 22 at 15.) They argue that the *Flynn* court's conclusion that the chief has authority to "discharge" the officers does not mean that an officer's employment is "terminated" as of the issuance of the discharge order. (*Id.* at 14.) They rely on Black's Law Dictionary for the proposition that "discharge" and "termination" have two distinct meanings so while the chief has the authority to "discharge" an officer, the employment relationship is not completely severed until the circuit court issues its decision upholding the Board's affirmation of the chief's discharge. (*Id.* at 14-15.)

Vidmar and Manney essentially make the same argument in this case that the Seventh Circuit rejected in *Flynn*, that if a discharged officer seeks Board review, the employment relationship is in "limbo" until a decision is made by the Board. (Docket # 34 at 3.) Except now, they argue that the relationship stays in "limbo" until the circuit court issues its decision. (*Id.*) But this flies in the face of the express holding in *Flynn*. The Seventh Circuit clearly stated that Vidmar and Manney were "not employed" after their discharge by the chief. 863 F.3d at 638. In dismissing their wage claim, the *Flynn* court specifically found that Vidmar and Manney "were not employees of the Milwaukee Police Department after they were discharged by Chief Flynn." *Id* at 645.

The plaintiffs argue that this language used by the Seventh Circuit was "merely dicta" and that the "only issue [in *Flynn*] was whether the Chief had the authority to discharge an officer, or whether an 'order for discharge' was merely a recommendation to be addressed by the Board." (Docket # 34 at 4-5.) But this is inaccurate. The issue before the *Flynn* court was whether the officers had a property interest in employment once they were discharged for cause by Chief Flynn. Although one of the arguments made by the plaintiffs

9

was that the Chief had no authority to discharge the officers, this was not the primary issue before the court. Thus, the date the officers' employment with the MPD terminated was far from dicta, but central to the court's holding.

The Seventh Circuit answered the question before me in *Flynn*. Vidmar and Manney's employment ended on the date the chief signed their discharge orders. It is unclear how Wis. Stat. § 62.50(21) changes the *Flynn* court's analysis. The plaintiffs again try to argue that the "final and conclusive" language in subsection 21 means that termination of employment does not occur until the circuit court issues its order. But as the court noted in interpreting § 62.50(17), §62.50(21) also contains language that if the Board's decision is reversed, the discharged member will be *reinstated* to his or her *former position*. Again, as the *Flynn* court reasoned, there would be no need for *reinstatement* to a *former position* if one was still in the position after the chief's discharge. There is no limbo. Employment terminates as of the chief's discharge of the officer. The parties agree that this is January 8, 2014 for Vidmar and October 15, 2014 for Manney. Thus, Vidmar's employment terminated, and his cause of action under the FLSA accrued, on January 8, 2014. Manney's employment terminated, and his cause of action under the FLSA accrued, on October 15, 2014.

        2.      *The Applicable Statute of Limitations*

Again, the FLSA provides that a cause of action must be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). This lawsuit was filed on January 25, 2017 in Milwaukee County Circuit Court and was subsequently removed to this court. (Docket # 1.) Given Vidmar's cause of action

accrued on January 8, 2014, even using the three year statute of limitations, his claim needed to be filed on or before January 8, 2017. Thus, Vidmar's claim is time barred and must be dismissed.

The plaintiffs argue, however, that Manney's claim is timely because the City willfully violated the FLSA. In considering willful violations under the FLSA, the Supreme Court stated as follows:

> [C]ommon usage the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in *Thurston*-that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute-is surely a fair reading of the plain language of the Act

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (internal citations omitted). The plaintiffs bear the burden of showing that the City's conduct was willful for purposes of the statute of limitations. *See Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995). Whether the two- or three-year statute of limitations applies is a question of fact. *Id.* ("It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully.").

It is undisputed that the City is required to comply with the FLSA. (Roovers Decl. ¶ 5, Exh. 3, Docket # 28-3.) The Milwaukee Code of Ordinances, Section 350-6 states that the "Comptroller shall develop and establish payroll recordkeeping, payment inclusions and payroll practices to ensure good-faith compliance with the act." (*Id.*) Further, Section 350-4 of the Code of Ordinances states that "[a]ll earned overtime, whether earned as cash or

11

compensatory time, shall be paid as cash upon separation from city service." (Roovers Decl. ¶ 4, Exh. 2, Docket # 28-2.)

The City argues that the only testimony from the City in this case is from Cynthia Ratliff, payroll supervisor for the MPD, and Carianne Yerkes, assistant chief with the MPD. The City argues that Ratliff was operating under a good faith assumption that the payroll department's comp time practices were compliant with the FLSA and Yerkes was unaware of the FLSA's requirements regarding the payment of comp time. The plaintiffs argue that the Milwaukee Code of Ordinances makes clear the City's obligations under the FLSA and the City cannot rely on the alleged ignorance of its employees.

The City has stipulated that it has not paid Manney the monetary equivalent of the 22.0 hours of banked comp time. (Stip. Facts ¶ 18.) The City argues, now, that until the Seventh Circuit's decision in *Flynn*, it was "not entirely clear" when a police officer was "terminated" for purposes of the FLSA. (Docket # 27 at 10.) Ratliff testified that it was the policy of the MPD's payroll department to not pay out banked comp time until a discharged employee had exhausted his or her appeals process. (Deposition of Cynthia L. Ratliff ("Ratliff Dep.") at 26-30, Declaration of Benjamin J. Roovers ("Roovers Decl.") ¶ 3, Exh. 1, Docket # 28-1.) However, if an employee retired or resigned from employment, it was the payroll department's practice to "let them have the last pay period on the payroll," so within 30 days of the date of separation, the City paid them out everything they were owed. (*Id.* at 9-10.) Ratliff's explanation echoes the plaintiffs' argument as to why their causes of action did not accrue upon the chief's discharge order—that the employees were in a state of flux until the appeals process was settled. Ratliff testified that when she thought about

12

"separation from city service," she thought of "permanent separation" because she had seen officers go through the appeals process and get their job back. (*Id.* at 31.)

Again, an employer's conduct is "willful" if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Ratliff testified that she was never told the MPD'S practice was at odds with the law and that she was unaware that the City charter required that all earned overtime be paid upon separation from City service. (*Id.* at 30.) Similarly, Yerkes testified that she was unaware that the FLSA requires payment of banked comp time upon termination of employment. (Deposition of Carianne Yerkes ("Yerkes Dep.") at 10, Declaration of Benjamin J. Roovers ("Roovers Decl.") ¶ 7, Exh. 5, Docket # 28-5.) On this record, the plaintiffs have not shown that the City "knew" its conducted violated the FLSA.

There is, however, a genuine issue of material fact as to whether the City's action showed reckless disregard for whether its conduct was prohibited by the FLSA. Ratliff, as payroll supervisor, testified that she was never given any instruction on compliance with the FLSA. (Ratliff Dep. at 33-34.) Yerkes explained that she assumed the MPD's policy with regard to banked comp time stemmed from "years ago," when a police officer was fired, he or she was still paid and was still "like an employee" while the appeals process was pending. (Yerkes Dep. at 6.) However, she also testified that "[a]t some point in time, employees stopped being paid while they were discharged, and [she] wasn't aware that comp balances and things like that weren't being paid out . . . ." (*Id.*) Yerkes testified that it was her assumption that even if an officer was discharged, he or she was paid their banked comp time and she did not know this was not happening until speaking with Ratliff prior to Yerkes' deposition. (*Id.* at 11.) Even at the time of the court's decision in *Flynn*, the City

13

maintained the position that the officers had no further property interest in their employment upon discharge. While the City attempts to rest on its ignorance of the FLSA, a reasonable jury could find that the City recklessly disregarded the fact that the officers were not being paid in accordance with the FLSA. Thus, summary judgment is not appropriate on the question of whether the City willfully violated the FLSA.

## CONCLUSION

Both the plaintiffs and the City have moved for summary judgment. The plaintiffs argue that the City has violated the FLSA as to both Vidmar and Manney and ask for an award of compensatory damages, liquated damages, and to set further proceedings to determine attorneys fees and costs. The City argues that the officers' employment ended when they were discharged by the chief and because the City did not act willfully, both officers' claims are barred by the FLSA's two year statute of limitations.

The City's motion is granted in part and denied in part. I find that the officers' employment with the MPD ended when they were discharged by the Chief of Police. For Vidmar, this is January 8, 2014. Whether utilizing the two or three year statute of limitations, the January 25, 2017 lawsuit was untimely filed. Thus, the defendant's motion for summary judgment is granted as to Vidmar. However, Manney was terminated on October 15, 2014. I find that there is a genuine issue of material fact as to whether the City willfully violated the FLSA as to Manney. Thus, Manney's cause of action may be timely. For this reason, the defendant's motion for summary judgment as to Manney is denied.

The plaintiffs' motion for summary judgment is denied. Again, Vidmar's claim is barred by the statute of limitations; thus, Vidmar's claims are dismissed. Even though the City admits that it has failed to pay Manney his banked comp time in violation of the

14

FLSA, I cannot grant the plaintiffs' motion as to Manney on this record because whether Manney's lawsuit is timely remains a question for the jury.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiffs' motion for summary judgment (Docket # 21) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Docket # 26) is **GRANTED IN PART AND DENIED IN PART**. The defendant's motion as to Vidmar is granted and Vidmar's cause of action is dismissed as untimely filed. The defendant's motion as to Manney is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court will contact the parties to schedule a scheduling conference in this matter.

Dated at Milwaukee, Wisconsin this 2nd day of November, 2017.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge