# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHRISTOPHER E. MANNEY,**

    Plaintiff,

    v.                                                   Case No. 17-CV-223

**CITY OF MILWAUKEE,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Christopher E. Manney is a former officer of the Milwaukee Police Department ("MPD"). Manney sues the City of Milwaukee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, alleging that the City failed to pay compensatory time upon his termination of employment from the MPD. The City moved for summary judgment on Manney's claim, arguing it was barred by the FLSA's two year statute of limitations. Manney opposed the motion, arguing that the applicable statute of limitations is three years because the City's conduct was willful.

I denied the City's motion, finding there was a genuine issue of material fact as to whether the City's action was willful. (Docket # 41.) A trial to the Court was held on February 12, 2018. At trial, the City moved to dismiss Manney's complaint pursuant to Fed. R. Civ. P. 52(c), arguing that Manney failed to establish damages. The motion was taken under advisement and the parties were ordered to file post-trial submissions. For the reasons explained below, the City's motion to dismiss is granted and the action is dismissed.

## BACKGROUND

At issue in this case are twenty-two hours of banked compensatory time that the City failed to pay to Manney after his employment ended with the MPD. (Transcript of Feb. 12, 2018 Court Trial ("Tr.") at 135, Docket # 57.) During trial, the City moved to dismiss Manney's complaint at the conclusion of Manney's case-in-chief pursuant to Fed. R. Civ. P. 52(c) on the grounds that Manney failed to meet his burden of proving damages. (Tr. 134.) Specifically, the City argued that Manney failed to differentiate between compensatory time earned under the FLSA and compensatory time earned under the collective bargaining agreement between the City and the Milwaukee Police Association. (*Id.*) I denied the motion and allowed the City to present its case. (Tr. 142.) The City renewed its motion at the conclusion of its case-in-chief. (Tr. 167.) The motion was taken under advisement and the parties were given an opportunity to submit relevant authority on the issue. (Tr. 170.)

## ANALYSIS

Under Fed. R. Civ. P. 52(c), if a party has been fully heard on an issue during a court trial and the court finds against the party on that issue, the court may enter judgment against the party on that claim. The court has discretion to wait until the close of evidence to render judgment.

Manney alleges that he was denied compensatory time under 29 C.F.R. § 553.27. (Second Am. Compl., Docket # 16.) The FLSA provides that upon termination of employment, an employee must be paid for unused compensatory time earned after April 14, 1986. 29 C.F.R. § 553.27. Pursuant to 29 U.S.C. § 553.230(b), "[f]or those employees engaged in law enforcement activities . . . who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required under section 7(k) until the

2

number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28." The MPD utilizes a fourteen day work period. (Tr. 100-01, 144, Exh. 1002 at 8.) The regulation provides a chart showing that for a fourteen day work period, overtime compensation (in premium pay or compensatory time) is required for all hours worked in excess of eight-six hours. § 553.230(c).

Thus, the FLSA requires payment of overtime compensation for all hours worked in excess of eight-six hours during any fourteen day work period. Law enforcement employees "may receive compensatory time off in lieu of overtime pay for hours worked in excess of the maximum for their work period as set forth in § 553.230." § 553.231(a). Section 553.28(a) provides that:

> Compensatory time which is earned and accrued by an employee for employment in excess of a nonstatutory (that is, non-FLSA) requirement is considered "other" compensatory time. The term "other" compensatory time off means hours during which an employee is not working and which are not counted as hours worked during the period when used. For example, a collective bargaining agreement may provide that compensatory time be granted to employees for hours worked in excess of 8 in a day, or for working on a scheduled day off in a nonovertime workweek. The FLSA does not require compensatory time to be granted in such situations.

The regulations provide that the "requirements of section 7(o) of the FLSA, including the limitations on accrued compensatory time, do not apply to 'other' compensatory time as described above." § 553.28(e).

The collective bargaining agreement provides that the normal hours of work for employees covered by the agreement is work shifts of eight consecutive hours which, in the aggregate, results in an average normal work week of forty hours. (Exh. 10 at 41, Article 14, Section 1.) The agreement also provides that overtime consists of all authorized assignments outside of the regularly scheduled eight-hour shift. (Exh. 10 at 42, Article 15, Section 1.)

Thus, an officer who works eighty-six hours in a fourteen day work period would be entitled to six hours of overtime under the collective bargaining agreement; however, the officer would not be entitled to anything under the FLSA in terms of compensatory time. (Tr. 117-18.)

The parties both present hypothetical scenarios to argue whether it is mathematically possible for a police officer to earn FLSA-required compensatory time in a given pay period without earning any "other" compensatory time. (Def.'s Br. at 4-5, Docket # 60; Pl.'s Resp. Br. at 5-6, Docket # 62; Def.'s Reply Br. at 2-4, Docket # 64.) None of this analysis, however, answers the question of whether Manney's twenty-two hours of compensatory time actually fall under the FLSA. "An employee bears the burden of proving that she performed overtime work for which she was not properly compensated." *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 594 (7th Cir. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)). Additionally, "once a plaintiff establishes a violation of the FLSA, the plaintiff must establish damages, and that the [sic] task is not a difficult one where the employer has kept time records in compliance with the requirements of the FLSA." *Id.* at 595. The general rule that damages must not be uncertain and speculative also applies. *Id*.

However, in cases where the employer fails to keep proper records as required by the FLSA, the employee is allowed to prove damages under a relaxed evidentiary standard. The *Brown* court stated that "*Anderson* recognized that where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure. To place the burden on the employee of proving damages with specificity would defeat the purpose of the FLSA where the

4

employer's own actions in keeping inadequate or inaccurate records had made the best evidence of such damages unavailable." *Id.*

Manney argues that the rule against uncertain and speculative damages applies only to situations where the fact of damage itself is uncertain, citing *Anderson*. (Pl.'s Resp. Br. at 6.) Specifically, Manney cites the following quotation from *Anderson*: "[n]or is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain." 328 U.S. at 688. Manney argues that he was certainly damaged by the City's refusal to pay his banked compensatory time. (Pl.'s Resp. Br. at 7.) Thus, he argues that he need not prove his damages with specificity.

In *Anderson*, the Court stated that an employee who brings suit under the FLSA has the burden of proving that he performed work for which he was not properly compensated. 328 U.S. at 686-87. However, the Court also noted that the FLSA imposes a duty on the employer to keep proper records of wages, hours, and other conditions and practices of employment. *Id.* at 687. The Court explained that "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." *Id.*

The Court continues that:

> The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work . . . [i]n such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with

5

> evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88. The Court stated that the "employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the FLSA]." *Id.* at 688. The Court then states that "[n]or is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain." *Id.* The Court continues:

> But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts."

*Id.* (quoting *Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 563 (1931)). Thus, Manney's quotation from *Anderson* is taken out of context. *Anderson* does not relieve a plaintiff from meeting his initial burden of demonstrating damages under the FLSA. Rather, *Anderson* provides a lessened evidentiary standard for a plaintiff to prove damages in situations where the employer failed to keep accurate records in compliance with the FLSA.

Manney argues that the lessened evidentiary standard articulated in *Anderson* should apply in this case. He cites to the fact that in the City's original answer to his complaint, it asserted Manney had forty-six hours of banked compensatory time at the time of his termination of employment and in the City's answer to Manney's second amended complaint, it stated the amount was twenty-two hours. Manney argues that the "only

plausible basis for such confusion is lack of proper/accurate record keeping. Whether it is classified as error, confusion, or mistake, it certainly calls into question the accuracy of the City's records themselves." (Pl.'s Resp. Br. at 10-12.) But Manney offers speculation, not evidence, in support of his argument that the City's employment records failed to comply with the FLSA. Compare Manney's speculation to *Brown*, where the Seventh Circuit found that the plaintiff presented evidence that her employer's records were not in compliance with the FLSA:

> First, Brown introduced evidence that the records were accurate when submitted by employees, but were subsequently altered by management prior to issuance of the paychecks. Specifically, Brown testified in her deposition that managers, district managers, and assistant district managers could manipulate the records of times worked in the computer system. She testified that as a manager, she personally observed employees paychecks that were not reflective of the times in the printouts and e-mails that she had sent to payroll. She further declared that when she reported that a person's check was short, she was given the response that they were not going to get paid. Finally, Brown also testified that she had the same experience when LaTasha Holder was the store manager, with Brown's own paycheck not reflecting the hours on the printout.

534 F.3d at 595-96. Because Manney has presented no evidence that the City's record keeping failed to comply with the FLSA, Manney is not entitled to the relaxed evidentiary standard articulated in *Anderson*. Manney faults the City for raising this issue for the first time at trial. While it would have saved the parties and the Court resources had the issue been raised earlier in this case, Manney cites to no authority stating that it is procedurally improper to raise the issue at this juncture. Moreover, it is Manney's burden to prove his case—including damages.

7

Manney must come forward with evidence to establish his damages under the FLSA. Manney relies solely on the testimony of MPD Payroll Supervisor Cynthia Ratliff. During Manney's case-in-chief, Ratliff testified as follows:

> Q: So you were aware of the obligation to pay banked comp time upon termination of employment, correct?
>
> A: Yes.
>
> Q: You just didn't know that there was a regulation that required you to do it?
>
> A: Correct.
>
> Q: Let's talk about Officer Manney's comp time. I understand from your reading the regulation that it applies to comp time earned after April 14th, 1986, correct?
>
> A: Yes.
>
> Q: All of Manney's comp time would therefore -- was earned after that point in time, was it not?
>
> A: Yes.
>
> Q: So his 22 hours of banked comp time was subject to that regulation, correct?
>
> A: Yes.
>
> Q: But the City didn't pay the comp time when he was terminated, did it?
>
> A: No.
>
> Q: In fact, the City has still not paid the banked comp time, correct?
>
> A: Correct.

(Tr. 23-24.) Manney's reliance on this portion of Ratliff's testimony ignores her subsequent testimony during the City's case-in-chief. Ratliff testified that the MPD differentiates between compensatory time earned as a result of contractual overtime from compensatory time earned as a result of the FLSA. More importantly, she also testified that without

running a specific query, she could not tell if Manney's twenty-two hours were contractual hours or FLSA hours. (Tr. 153.)

The City argues that Ratliff's earlier testimony that Manney's twenty-two hours of banked compensatory time was subject to the FLSA was a response to counsel's question regarding whether all of Manney's banked compensatory time was hours earned after April 14, 1986. (Def.'s Br. at 7.) Manney argues that this reading of Ratliff's testimony is not credible and that Ratliff's subsequent testimony does not call into question her earlier testimony that the twenty-two hours were covered by the regulation. (Pl.'s Resp. Br. at 9.) He states that Ratliff was "*certain* that the 22 hours were covered under the regulation. The only thing she was *uncertain* about is whether any portion of those hours were NOT covered under the Act." (*Id.*) (emphasis in original).

Manney misreads Ratliff's subsequent testimony. Ratliff testified unequivocally that she could not tell which portion of the twenty-two hours was FLSA and which portion was contractual. (Tr. 153.) She also explained that from payroll's perspective of writing a check to Manney for his twenty-two hours owed, it did not matter to payroll whether all or some of the hours came from the FLSA. (Tr. 155-56.) Thus, Ratliff was just looking at the balance owed at the time of termination (twenty-two hours) and could not say for sure which part of that twenty-two hours was contractual and which part was FLSA related. (Tr. 155.)

Finally, Ratliff testified that if she ran a query, she would be able to separate out FLSA hours from contractual hours. But simply looking at the twenty-two hours total, she could not tell which hours potentially fell under the FLSA. (Tr. 153.) On this testimony, Manney argues for an opportunity to go back and obtain the evidence necessary to try to prove his case. Manney faults the City for not running this query and counsel stated at the

end of trial that he would ask for the ability to have the query run to determine this. (Tr. 168.) Again, proving damages is the plaintiff's burden. Manney should have requested this information from the City during discovery. Manney may fault the City for not raising this issue earlier in the proceeding, but ultimately it was Manney's burden to prove his case, not the City's. Accordingly, on this record, I find that Manney has failed to prove that any of his twenty-two hours of banked compensatory time fell under the FLSA. As Manney has failed to prove damages under the statute, his cause of action under the FLSA fails and judgment will be entered in favor of the defendant. Given this finding, I need not address the parties' statute of limitations arguments.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 52(c) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion for leave to file a sur-reply (Docket # 63) and plaintiff's motion for leave to file a sur-reply (Docket # 66) are **DENIED**.

**IT IS FURTHER ORDERED** that the clerk of court will enter judgment in favor of the defendant and against the plaintiff. This action is dismissed.

Dated at Milwaukee, Wisconsin this 21st day of May, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge